IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| Edisson Leonidas T.C., <br><br> Petitioner, <br><br> vs. <br><br> Pamela Bondi, Attorney General et al., <br><br> Respondents. | Case No. 0:26-cv-00842-DMT-LIB |

### ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS

### INTRODUCTION

[¶ 1]   THIS MATTER comes before the Court on a Petition for Writ of Habeas Corpus filed on January 29, 2026. Doc. No. 1. The Respondents filed a Response on February 3, 2026. Doc. No. 5. For the reasons set forth below, the Petition is **DENIED** and **DISMISSED without prejudice**.

### BACKGROUND

[¶ 2]   The facts in this case are not in dispute. Petitioner is a citizen of Ecuador but has lived in the United States since 2022, residing in Minnesota. Upon his illegal entry in 2022, Petitioner filed an application for asylum, which is pending. Department of Homeland Security ("DHS") detained the Petitioner pursuant to 8 U.S.C. § 1225(b)(2)(A) on December 30, 2025. Defendant is detained in Minnesota.

### DISCUSSION

   **I.**   **Legal Standard: Habeas Corpus**

[¶ 3]   The Constitution provides the right to a Writ of Habeas Corpus, which requires authorities to present a detained person before the court to determine if the detainment is lawful. See U.S.

Const. Art. I, § IX. "Habeas is at its core a remedy for unlawful executive detention." <u>Munaf v. Green</u>, 553 U.S. 674, 693 (2008). As a general matter, 28 U.S.C. § 2241 grants district courts broad jurisdiction to issue a writ of habeas corpus "as law and justice require." <u>Jones v. Hendrix</u>, 599 U.S. 465, 473 (2023). A prisoner can bring a petition for a writ of habeas corpus when "[h]e is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). The Supreme Court has held that § 2241(c)(3) confers jurisdiction on district courts to hear habeas corpus challenges to the legality of the detention of aliens. <u>Rasul v. Bush</u>, 542 U.S. 466 (2004).

[¶ 4]   To benefit from the writ's protection, a habeas petitioner bears the burden of demonstrating by a preponderance of the evidence that his or her detention is unlawful. <u>Maldonado v. Olson</u>, 795 F. Supp. 3d 1134, 1143 (D. Minn. 2025) (collecting cases). Since the Petitioner is currently being held in Minnesota, this Court has jurisdiction over this matter. See <u>Trump v. J.G.G.</u>, 604 U.S. 670, 672 (2025) (per curiam) (holding that jurisdiction for core habeas petitions "lies in only . . . the district of confinement").

## II.    Change in Executive Agency Policy for Alien Detentions

[¶ 5]   Petitioner claims that Section 1225(b)(2) does not apply to him. That provision states, "in the case of an alien who is an applicant for admission, if the examining officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien **shall be detained** for a proceeding under section 1229a of this title." 8 U.S.C. § 1225(b)(2)(A) (emphasis added). "Read most naturally, §§ 1225(b)(1) and (b)(2) . . . mandate detention of applicants for admission until certain proceedings have concluded." <u>Jennings v. Rodriguez</u>, 583 U.S. 281, 297 (2018). Under Section 1225(b)(2)(A), the detained alien is not entitled to a bond

hearing. See id. (explaining that "neither § 1225(b)(1) nor § 1225(b)(2) says anything whatsoever about bond hearings").

[¶ 6]   Instead, the Petitioner argues Section 1226(a) applies. It provides: "On a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States." Section 1226(a)(2)(A) further states that the Attorney General "may" release the alien on bond. Jennings, 583 U.S. at 303. Section 1226(c)(1) contains several exceptions, restricting the Attorney General from releasing aliens who committed or are charged with certain offenses.

[¶ 7]   This Court begins its analysis by noting that this debate surrounding the applicability of Sections 1225(b)(2) and 1226(a) has arisen in many courts over the past several months. Previously, the Department of Justice (DOJ) advised Department of Homeland Security (DHS), and thus Immigration and Customs Enforcement (ICE), that § 1226(a) applied to aliens, like Petitioner, who were inadmissible, but were not subject to expedited removal at the time ICE detained them. See Inspection and Expedited Removal of Aliens; Detention and Removal of Aliens; Conduct of Removal Proceedings; Asylum Procedures, 62 Fed. Reg. 10312, 10323 (Mar. 6, 1997).

[¶ 8]   However, on September 5, 2025, the Board of Immigration Appeals ("BIA") held that § 1225(b)(2)(A) appropriately applied to this category of aliens, meaning those aliens are subject to mandatory detention and the immigration judge lacked jurisdiction to hold bond hearings or order release. Matter of Yajure Hurtado, 29 I. & N. Dec. 216, 220 (BIA 2025).

[¶ 9]   Many courts have held this change in policy is incorrect and granted the habeas petitions. See Coronado v. Sec'y, Dep't of Homeland Sec., 2025 WL 3628229, at *7 (S.D. Ohio Dec. 15, 2025) (noting more than 700 decisions addressing this issue with some courts characterizing the

"overwhelming majority" of decisions holding that Section 1226(a) applies). However, a small but growing number of courts have reached the opposite conclusion, including one in this District. See, e.g., Jose C. v. Bondi, Civ. No. 26-135 (PAM/DTS), Order, ECF No. 14 (D. Minn. Jan. 20, 2026); Coronado, 2025 WL 3628229, at *1; Mejia Olalde v. Noem, 2025 WL 3131942, at *1 (E.D. Mo. Nov. 10, 2025); Vargas Lopez v. Trump, 802 F.Supp.3d 1132 (D. Neb. 2025).

### III. Section 1225(b)(2)(A) Applies to Petitioner

[¶ 10] After reviewing the statutory language and relevant caselaw, the Court finds Section 1225(b)(2)(A) applies to Petitioner. Accordingly, Petitioner is not entitled to a bond hearing or release.

[¶ 11] In matters of statutory interpretation, the Court always begins "with the statute's plain language, giving words the meaning that proper grammar and usage would assign them." Union Pac. R.R. Co. v. Surface Transp. Bd., 113 F.4th 823, 833 (8th Cir. 2024) (cleaned up). The first question is whether Petitioner fits into the presumption of being an "applicant for admission" under § 1225(a)(1), which provides, "An alien **present in the United States** who has **not been admitted** or who arrives in the United States . . . **shall be deemed for purposes of this chapter an applicant for admission**." (emphasis added). In this context, "admission" specifically means lawful entry, not just presence in the United States. 8 U.S.C. § 1101(a)(13)(A). Accordingly, "[a]n alien c[ould] have physically entered the country many years before and still be an applicant for lawful entry, seeking legal 'admission.'" Mejia Olalde, 2025 WL 3131942, at *3.

[¶ 12] In this case, Petitioner fits all these criteria. Petitioner is an "alien." He is "present in the United States," and he "has not been admitted" because his asylum application is still pending. Agencies have differing objectives and enforce their policies differently within the boundaries of the statutes passed by Congress. The Court's job is to make sure those actions are within the law.

See Noem v. Vasquez Perdomo, 146 S. Ct. 1, *5 (mem.) (Kavanaugh, J., concurring in the grant of the application for stay) ("The Judiciary does not set immigration policy or decide enforcement priorities."). Petitioner is an "applicant for admission" for purposes of § 1225(b)(2)(A), meaning he is subject to detention and not eligible for a bond hearing.

[¶ 13] The Court is not persuaded by the argument that Section 1225(b)(2)(A) applies only to aliens arriving at ports of entry or who recently entered the United States. Section 1225(a)(1) explicitly includes more than just arriving aliens in the definition of "applicant[s] for admission." See § 1225(a)(1) ("An alien present in the United States who has not been admitted **or** who arrives in the United States . . . shall be deemed for purposes of this chapter an applicant for admission.") (emphasis added). The structure of Section 1225 similarly illustrates that Congress knows how to limit the scope of the text geographically and temporally but elected not to do so with regards to Section 1225(a)(2)(A). Mejia Olalde, 2025 WL 3131942, at *3. For example, Section 1225(b)(1)(A)(i) applies to an alien "who is arriving in the United States," Section 1225(b)(1)(A)(iii) applies to an alien who cannot show he has been physically in the United States "continuously for the 2-year period immediately prior," but Section 1225(b)(2)(A) is not so limited. That provision has no similar language restricting its applicability only to aliens who are in the process of "arriving" at a port of entry or arrived within a certain timeframe. If Congress wished to impose similar geographic and temporal restrictions on the category of aliens that fall under Section 1225(b)(2)(A), it could have done so as it did with Section 1225(b)(1). Id. at 4.

[¶ 14] Moreover, interpreting Section 1225(b)(2)(A) to apply in this case does not render superfluous the discretionary detention authority under Section 1226(a), the mandatory detention under Section 1226(c), or the recent amendments to Section 1226 by the Laken Riley Act. See 8 U.S.C. § 1226(c)(1)(E)(i)–(ii). Section 1226(a) authorizes the executive to "arrest[] and detain[]"

<u>any</u> alien pending removal proceedings. Section 1226(a) supplies detention authority for the significant group of aliens who are not "applicants for admission" and hence not subject to Section 1225(b)(2)(A), such as aliens who were previously lawfully admitted to the United States but are now removable. For example, the detention of aliens who have overstayed their visas is governed by 1226(a). <u>Id.</u> Likewise, Section 1226(c)(1) requires the executive to detain aliens who <u>have been admitted</u> and are now "deportable." <u>See</u> 8 U.S.C. § 1226(c)(1)(B). Section 1225(b)(2), however, does not apply to admitted aliens. As for the Laken Riley Act provisions, as with other grounds of "inadmissibility" listed in Section 1226(c), both (a)(6)(C) and (a)(7) may apply to inadmissible aliens who were admitted in error or through fraud. <u>See</u> <u>Mejia Olalde</u>, 2025 WL 3131942, at *4 (noting the Laken Riley Act may apply in situations where Section 1225(b) might not).

[¶ 15]  Even if the Court assumes there is a degree of surplusage, the fear of some redundancy does not supersede the plain meaning of Section 1225(b)(2)(A). "As the Supreme Court has explained, when confronted with a choice between an interpretation that honors a statute's plain meaning but produces surplusage, and an interpretation that ignores the plain meaning but avoids surplusage, there is no choice at all—the plain meaning must control." <u>Artola v. Garland</u>, 996 F.3d 840, 844 (8th Cir. 2021). In this case, the plain meaning of Section 1225(b)(2)(A) controls, meaning Petitioner is subject to detention and is not entitled to a bond hearing.

    **IV.**    **Petitioner's APA and Due Process Arguments Fails**

[¶ 16] Petitioner also claims his detention violates his due process rights under the Fifth Amendment and the Administrative Procedure Act (APA). As noted, Section 1225(b)(2)(A) squarely governs his immediate detention. Therefore, he is not being detained absent due process because being detained pursuant to a constitutionally legitimate statute promulgated by Congress is not a due process violation. The Supreme Court addressed a similar situation in <u>Demore v. Kim</u>,

538 U.S. 510 (2003), and concluded that mandatory detention pending removal proceedings does not violate due process. The <u>Demore</u> detainee argued that since deportation proceedings are indefinite, the indefinite detention violates the Due Process Clause. <u>Id.</u> However, the Court rejected that premise, holding that "detention under Section 1226(c) has a definitive end-point—the end of the removal proceedings—and thus a noncitizen is not subject to indefinite detention." <u>Id.</u> at 529. Thus, Petitioner's due process claim "must fail [and] [d]etention during removal proceedings is a constitutionally permissible part of the process." <u>Id.</u> at 531.

[¶ 17]   Likewise, Petitioner's APA violation claim fails because Section 1225(b)(2)(A) applies to Petitioner, meaning he was properly detained and is not bond eligible. Thus, there is no unlawful agency action for this court to review. <u>See</u> 5 U.S.C. § 706(2)(D) (a "reviewing court shall . . . hold unlawful and set aside agency action, findings, and conclusions found to be . . . without observance of procedure required by law.").

## CONCLUSION

[¶ 18]   The Petitioner apparently entered this country illegally. After that, he has done everything our government told him to do. Despite his efforts at compliance, a change in immigration policy has resulted in his detention. While unfortunate, it is not the place of this Court to insert its will. It is the place of Congress to enact laws that properly regulate lawful immigration and for the administration to enforce them. Accordingly, for the reasons set forth above, the Petitioner's Habeas Petition is **DENIED**. This action is **DISMISSED without prejudice**.

[¶ 19]   **IT IS SO ORDERED**.

DATED February 6, 2026.

Daniel M. Traynor, District Judge
United States District Court